Case number 15-7135 et al., United States of America XRL, Stephen Shea and Stephen M. Shea, Appellant v. Cellco Partnership, doing business with Verizon Wireless et al. Mr. Mee for the Appellant, Mr. Waxman for the Appellee. Mr. Mee, please, just in terms of format, why don't we have both of you in your allotted time address both the appeal and the cross-appeal, and then you'll get a little after that. Thank you, Ron. I appreciate that. May it please the Court, Chris Mee on behalf of the relator Stephen Shea. I would like to begin the first to file discussion with the plain language of four statutes at issue on principal cases we rely on in our brief. Let's begin with this court's decision in Brown v. Whole Foods. That statute said no civil action may be brought if a plaintiff could satisfy. This court, understanding that it had not been, did not treat that plain language as prohibitive and held the case in abeyance until the plaintiff could satisfy that condition. This court relied on the Supreme Court's decision in Oscar Meyer. That statute said no suit may be brought, and the Supreme Court held that because on the unique circumstances of that statute, it was appropriate to allow amendment or to hold the case in abeyance until a prerequisite to suit had been met, that it was appropriate not to dismiss there. The Eighth Circuit case in Wilson v. Westinghouse said no civil action may be commenced. Again, on the unique facts of that statute, the Eighth Circuit said not a problem. Finally, the First Circuit case in Gagois applied to this statute and this first-to-file issue. No person may bring a civil action while another case is pending. There are other cases we cited, such as Matthews v. Diaz, where the plain language is not quite as proscriptive but still imposes pre-filing requirements that the courts have allowed to be met post-filing. There is another line of cases, McNeil and Hallstrom, the two Supreme Court cases, most importantly there, where there was no issue about amendment. There was no argument, as far as I can tell from reading those cases, that the plaintiff had asked for supplementation or amendment. So is your view that in a situation in which there's already an action that's been filed and then the second one comes along, that it would necessarily be an error for the district court to dismiss the second action under the first-to-file doctrine? No, not necessarily, because there are doctrines, Your Honor, that apply in amendment or supplementation that allow discretion for a district court in the appropriate circumstances. What I would say is that... But I guess what I'm asking, so your view is that discretionarily a district court can keep the second action on the books and then allow it, but I guess what I'm asking is, would it necessarily be erroneous for the district court to dismiss the first-to-file doctrine? So it depends on timing. Perhaps I misunderstood your question. If the first case remains pending and the district court... Yes, Your Honor, I'm talking about one where the first case is pending and then the second action is filed and then the first-to-file bar is raised, is it necessarily an error for the district court then to say, rather than just holding the second case, I'm going to dismiss the second case? So it is... What I would argue is that all of these cases, the lesson from these conflicting opinions, and maybe smarter people than I am can attempt to harmonize them, but I think the lesson is each statute is unique. So what I'd say to you, Your Honor, is no. I would think there might be some circumstances where holding the case in advance might be appropriate in an example where the court might, as this court did in Brown v. Whole Foods or another circumstance, exercise discretion because this statute is unique. Remember, we're not talking about a jurisdictional requirement. Remember that the first-to-file language is specifically designed to incentivize relators to come forward with information. The Department of Justice... Can I just ask a question? Are you aware of a case where the first-file case and the second-file case were filed by the same person? Does it apply then? It just seems weird. And I was not counseled on the first round, and yes, I understand. I feel in some way... And that's who the counsel is, is the same plaintiff, right? Right. So all I'm saying is, Your Honor, I was not counseled to Mr. Shea when that decision was made to file a second separate case instead of just amending the first. I am not aware of any other false claims that case where that happened, and now given... They haven't raised Ritz-Judicata. Has Ritz-Judicata been raised in this case? No, because there is none. So the first case had, as Department of Justice rules require, they don't give you a release on something they haven't investigated and decided on. So the only release Verizon obtained for its $93.5 million was a release with respect to two specific contracts. The other release was a release on different agencies, different sets of facts. And so there is... I'm just saying, once I imagine Ritz-Judicata, I suppose NIDA might not kick in when it's the same party, but it's just sort of the whole purpose of the first to file. It's just weird that one person is canceling out his own second case. But that may be what the statute says as well. And the short answer is you're not aware of a case where this has happened. And just so you know, we made that argument to the first panel, and unfortunately we lost that. We didn't think that the bar should apply to the same relator. We lost that argument, and so we've got really a lot of cases. Right. So all I'd like to do with respect to the dueling plain language arguments, you've got McNeil and Holstrum. And remember what those statutes are about. They're both about a notice and exhaustion, give a government agency. In the case of McNeil, federal court claims, it has to be the Department of Justice, the opportunity, the agency, the opportunity to evaluate the claim, or in Holstrum, the EPA notice. So can I ask this question? If the regime you foresee happening is one in which district courts have discretion to keep the second action alive, they can dismiss the second action under the first to file bar, assuming the first action is still pending. But they don't have to, and they have discretion to keep them alive. It seems like it results in a bit of an anomalous situation, because then which second, in the event that the first action is dealt with in a way that allows a second action to come about, so you don't have a right to cut a bar, then you're talking about which person who brings the second action is going to get the benefit of it and going to get to go forward. And it just seems a little bit arbitrary that that's going to be determined based on whether a district court decides in its discretion to allow a second suit to survive or instead to dismiss it. So, Your Honor, I'd argue just the opposite. This is kind of how the sausage gets made in my world as a Relators Council. So here's what would be really arbitrary. You all decide that our first case, that Shea 2, is with prejudice. Instead of appealing to the Supreme Court, we take our time, let the period for cert application pass, and think about filing a second suit. The day the cert deadline passes, our case is no longer pending, and somebody else counts us. Somebody else gets in. Why are we dismissing the second case with prejudice? Well, that's what happened. Remember... But now we know it shouldn't have been dismissed with prejudice. Shouldn't have been. Now we know it should be. So just going forward, the second case won't be dismissed with prejudice. It would be dismissed without prejudice. And I guess the anomaly I see is that in some situations, a district court is going to dismiss the case without prejudice. In other situations, in the way you perceive the world happening, a district court is going to allow the second case to survive and then is going to hold it in abeyance or something. And it just seems arbitrary that the litigant who gets the relater, who gets to go forward as having put the placeholder second one in, is the one who happens to have the benefit of the favorable exercise of discretion by the district court. Now here's what's arbitrary. Let's assume the first filed case is dismissed and the period to appeal runs at midnight, 30 days afterwards. Somebody else meets me to the punch and files a false claims action at 12.01. Right? So now we're talking about there might be five relators out there. But you could have filed at 12.01 also. It's definitely a race to the courthouse. There's no doubt about it. It's just that everybody's on an equal footing. No. Because, well, that is truly arbitrary. So who gets their papers in first compared to, hey, I brought a case that was pending while the first action was pending. The Department of Justice had the benefit of what I disclosed in that suit to aid it in its investigation of the first suit. But because I filed even earlier than those four other guys who filed at 12.02 at midnight, they go first and I'm out of luck. That's arbitrary. What's a well-ordered system is one in which the district court can evaluate the circumstances. Who filed when? What are the nature of their allegations? Who has the resources to go forward? What's fair? What should happen here in an orderly system? With all due respect, I think your proposal is the arbitrary. It scared me. You know, as a Relators Councilman, somebody walks in my door, I get scared. If I think they've got a good case, I've got to get their own file. Now, it is that incentive. Remember that as that Relators Council, I'm eager to get my client's case on file. I have no clue, usually, whether there are other cases that have been filed earlier that under seal. So the first to file rule has nothing in it, right, that educates me or puts me in a position to understand that, hey, I should wait. I should exhaust something. We want the incentive for five copycat suits to be filed while the first one is under seal because DOJ gets the benefit of all that additional information. Those additional Relators may not get a penalty because they weren't first to file, but they will have helped the Department of Justice. The first to file purpose will be served. Compare that to the exhaustion cases like McNeil and Halster. You can make the case that exhaustion, that putting a government agency on notice and letting it do its job. Let's hear about your theory here. So you filed your amended, I mean your second amended complaint. Is your theory that for statute of limitations purposes, it relates back to the original complaint in 2009 so you can go back to 2003? Yes, Your Honor, and that's why we're here. So that's something that seems odd to me because we know that until Verizon 1 was dismissed, I've got to make sure I get my dates right, 2011, it was actually a legal and factual impossibility for you to have a viable action. Normally when you're amending a complaint to address something, it's something that could have been addressed and fixed. The exhaustion issues, the things in Brown and Oscar Meyer could have been done before the complaint was filed, just weren't. They were correctable. There's nothing you could have done factually or illegally to have a viable complaint in this case before Verizon 1 was dismissed. Is that correct? Technically, yes, although the circumstances of the fact that we were the plaintiffs in both arguably makes it a little different. That may go to your discretion argument. So as to that, then at a bare minimum under your theory, shouldn't the statute of limitations relation back period only relate for your Second Amendment complaint only relate back to the time of dismissal of Verizon 1? What justification could there possibly be for going further back? So I must confess, Your Honor, I'm not prepared to argue relation back or equitable tolling, which is another issue here. The real reason the parties are extending resources is because you are right to say there may be statute of limitations implications from dismissing without prejudice and having us refile compared to letting us keep this suit alive. That's why I've spent the time to be in front of you. Are there any cases deciding or discussing whether during the period of the bar, the first to file a law, that the statute of limitations is upheld? I'm afraid, Your Honor, I haven't looked at that issue. I really apologize. I just don't know the answer. You know, the obvious argument would be, Your Honor, that yes, the first to file rule is not jurisdictional, which we know from Heath. And yes, this is the kind of statutory regime where the unique circumstances of the statute argue for a discretionary supplementation amendment regime to allow the curing of a defect, which you point out if our case had been brought out from under seal while the first was pending and the defendant had the opportunity to file a motion to dismiss, arguably we wouldn't have any power to change that. But the same is true in terms of our power when we file. We have no power to know whether there's somebody else who's already brought a case and no power to, therefore, wait until that case has been resolved. The holding of bans that happened in the other cases you have mentioned didn't sort of allow a gamesmanship to get around statute of limitations. In the same way here, it really is letting you reach back further than you could as a matter of law or fact ever have been able to file a viable complaint. Well, so, Your Honor, if that turns out to be true, Your Honor's point about the limitations period only being applicable once the first is dismissed might apply. I understand your point. I have to leave those arguments for another day because I don't know the answer. But I'd also point out that the gamesmanship here is not just on one side of this podium in terms of statute of limitations. How do you distinguish the Halston v. Tillamook case from the Supreme Court? How do you distinguish there where they held that this was, not this, it was a different statute, but a textual precondition to filing couldn't be satisfied through means of holding, I guess a stay was an issue there. Right. So, several ways. First, arguably, those are jurisdictional requirements, although McNeil held that question open. They are situations where there was an exhaustion requirement to let a state agency do its job, which has an independent value that is different than a pending case that can get resolved while ours is under seal and still pending. So, different statutes, different purpose, jurisdictional, and most importantly, in those cases, no suggestion that the plaintiffs had sought to amend or supplement to allege in the case that the situation had been cured. And because McNeil and Halston didn't deal with that, I assume your Honor's opinion in Brown v. Whole Foods made that same judgment, that McNeil and Halston don't control your decision on behalf of the plaintiffs there. Oscar Meyer and Brown were both pro se plaintiffs with certain civil rights statutes. Right. And so, that's an example of how the unique purpose of a statute and the incentives and the statutory structure taken as a whole, I think, has to be treated individually. And so, this first to file bar really is designed to have the effect of causing us trickery. Right. The whole idea of all the McNeil, Halston, everything else, the language that was talked about was, hey, do something first, don't rush to the courthouse. And that's the way I would distinguish literally every other case that is dealt with as compared to the first to file under the False Claims Act. There is no other statutory circumstance that I've seen where the language is specifically designed to tell us, hurry up and get on file. And under those unique circumstances, it is appropriate to hold it in advance because we're powerless, you know. We follow the incentive and we file early. But, you know, it's a different statute. And that's how I distinguish all the other cases, not just McNeil and Halston. On the, I guess I just need a little help understanding. Actually, this case is different from the prior one because, not only the different contracts and different agencies, my understanding is some of the charges that they allegedly made and weren't supposed to make were things like the Federal Universal Service Charge, 9-1-1 charge, or not 9-1-1, excuse me, 9-1-1 charge. I guess I'm really confused reading your complaint because you quote there all kinds of contract terms that tell them that they're going to charge those charges. I must just be misunderstanding something. Well, so what we quoted in our complaint were three modifications filed by Verizon with respect to one of the 20 contracts. So I don't want to suggest all this language applies to all of them. But it is indicative of a corporate practice and a corporate intent. Okay, but so as to those, I'm on page 12 of the complaint. I'm just misreading something here. I'm confident of it. You have the bolded language that says, we're going to bill the stuff that's required by law to bill the customers. And then it says, in addition, we're going to charge other costs that we're exposed to, including regulatory charge, which happened to be 9-1-1, and the Federal Universal Service Charge. Plain as day. That's exactly right. So wasn't that a fraud? I'm sorry, I'm just misunderstanding something. They told them they were going to charge them, didn't they? Isn't that what this means? Sure, but you just read the key language. We're required to charge it. No, no, no, no. Then there's the next part. In addition to those that we're required to collect, we'll also collect charges to help defray taxes and government, other things. In addition to those that we're required, we're also going to collect other things like the Federal Universal Service Charge. Okay. So if you look earlier in the complaint, these are firm fixed price contracts. Under the FAR, the price that they bid and the price that they're charging is supposed to incorporate literally every one of those charges. The point we tried to make when we talked about those modifications is, number one, the language that they are required by law to charge this is not true, is a false statement, and is designed to mislead. Okay, but if one reads just on that, I'm just trying to make sure I understand. As to that, that would seem to be at best a complaint that one thing was bolded and the thing where we told you we're charging this is not bolded. And why did they do that? Okay, so that's your fraud, that they didn't bold the other one? No. It shows this is legal. Cover your rear end language with all due respect. This language shows there's a procedure. If you want to charge pricing, additional fees, under a firm fixed price contract, there's a procedure for seeking approval to do that. It's called a price adjustment. I got all that, but this is part of the contract, this modification, or something that was submitted by Verizon, too? It was submitted, but no, it doesn't have the ability to change the terms of the contract and allow them to bill. Tell the government what they were doing. Well, no, they didn't. They didn't say. A truthful disclosure would have been the following. We have a practice. That applies to commercial and government contracts. Okay? We bill all sorts of stuff under that module that we don't disclose to you in advance, that we describe as taxes, but which really are the price of doing business, and which under the terms of all of our contracts, we have no right to bill for. So they could have said, but because we'd like to get more money from you, we would like an economic price adjustment so we can charge you more money. That's what a truthful disclosure would have been. Instead, what they're doing is taking advantage of, with all due respect, a government contracting officer who gets reams of paper and has to read through and find those specific paragraphs. So carefully crafted by a lawyer. Don't get me wrong. That lawyer was really smart. That lawyer gave them an argument in front of a jury. See, we told the contracting officer exactly what we're doing. The point I'm trying to make is. What is a modification? What is the legal role of a modification? Is it a modification of the contract? I'm confessing my lack of knowledge of this whole area. That's fair. So here's the difficulty. Remember that no single government employee has the ability to bind the United States with respect to contracts or other actions. So what you've got here is a situation where, in order legally to charge more money, we contend, and you have to accept those facts as true as alleged in the complaint, we contend that in order to charge more money, they had to file an economic price adjustment, an application where they would tell the government what they were doing and tell the government, we're not allowed to bill for these, but we'd like to. Instead, they had carefully crafted language that revealed. I mean, that whole thing and the way the language changed makes it clear. Is that modification a matter of public record? Yes. Yes. I mean, you know, I'd be hard-pressed to say that, you know, the government wasn't on notice. I'm not sure. I haven't thought about whether it fits the specific categories of the first-to-file rule, but I'm not sure I want to go there. But, Judge, remember this is one contract. But what it shows is they are not telling the truth about what they're required to charge. They're not telling the truth about the nature of these charges, and that's where the district court slightly got it wrong in terms of what Mr. Shea brought to the table. It's not just that he said they're billing for taxes and charges. It's, hey, they described them funny. They described them in a way so that a contracting officer won't figure it out. They described them in a way so that Mr. Shea's commercial customers, really sophisticated folks, like the MetLife folks, I guarantee you if they had a Verizon or an MCI contract and Mr. Shea was representing them, he'd get them millions of dollars back. So is this going to why the modification language that's in your complaint doesn't qualify as a public disclosure? Right, exactly, because it's, of course, the false invoice that goes to the government, you know, like in the Civil War, the false invoice for boots that weren't properly made, there's a transaction that's on the public record. That invoice went to the Department of the Army, but that invoice, nor the modifications, never told the Army those boots were made in a very shoddy way, and good luck to your soldiers when they start marching. You know, that's what makes it false. Yes, my question is, are there cases holding that if a company tells the government what is charging, they have a contract that says, don't charge X. That's what the contract says. But there's a modification procedure, and they send in a modification that says, we're going to charge X. And the contractor doesn't do anything about it. Contract officer, right. I'm just talking about a simple contract that doesn't have so many letters. Right, amen. Is that fraud? Depends on the facts and circumstances. That's why we have district courts and juries. So I can see circumstances where absolutely it's not a fraud, right? The person who writes that modification believes in good faith. The more sophisticated you are, the more likely it is that you're defrauded, because you have lots of layers of review. Well, no. Again, if those sophisticated layers of review don't reveal the problem, you know, a well-meaning corporate compliance department goes through the traps and doesn't recognize that they're overbilling, of course you're right. Of course it's no fraud. Absolutely. But we're here at the motion to dismiss stage where, you know, we're alleging a corporate practice of knowingly overbilling. Remember what Mr. Shea's deposition testimony talks about, which is every time you pick up the phone and call Verizon, they'd immediately say, you know, where's your money? It's not like, oh, this came out of the blue. Our compliance department had no idea. Come meet with us, Mr. Shea, because we had no idea this was going on. Instead, remember that ex-employee said we had no different billing module for the commercial thing that was ripping off all our commercial customers to the tune of $50 million that Mr. Shea recovered. And the government module that ripped off the government at least, well, I mean, they paid $93 million with no admission of liability with respect to two contracts. And so you're right, Judge, facts and circumstances. If the contracting officer fully understood everything and their compliance department didn't know what it was doing, and this language, although it looks suspicious to me, and I think it should look suspicious to you, I think at the motion to dismiss stage, you have to accept the inferences in our favor. Of course, I'm a trial lawyer. We can lose. But that's what trials are for. And I can't wait to talk to the folks who wrote that language because they're lawyers. And this is a modification to one of the contracts? Do we know from the complaint? Right. No. Whether it travels to other contracts? Right. No, we don't. But what we do know is it shows a corporate practice. This is your allegations of fraud in the complaint. This outlines what your nature of the fraud that you're alleging is, right? It's one example. Well, I think all of your complaint has. Well, we've got no, that's not true. With any specificity. With all due respect, I disagree. So what the complaint alleges that Mr. Shea understood from direct knowledge, and here it's really important that we talk about direct knowledge because the cases on public disclosure sometimes get this a little fuzzy, the difference between third party and direct knowledge. So the idea that Mr. Shea has to be an insider at Verizon, I would suggest to you that there is no difference between Mr. Shea being employed by Verizon and seeing this practice go on versus Mr. Shea being employed by customers of Verizon and getting direct admissions from company personnel and seeing with his own eyes the charges that were imposed on his commercial customers, and hearing the admissions from Verizon that those charges were not justified and that they weren't turning off the billing module, right? That is more than just these modifications. It is exactly what you required in each, Your Honor. It is a corporate practice and policy of overcharging customers that Mr. Shea had direct knowledge of from admissions by Verizon employees, and he collected $50 million for his commercial customers as a result, and Verizon paid $93 million without admission. That definition of direct applies to the prior version, I guess the pre-2010 version of original source, which required direct and then direct fell out after 2010? No, direct did not fall out. Okay. Well, maybe I'm wrong. Calculus corrected me. Forgive me. It did fall out. Okay. Right, okay. And so we have to do a different test for original source pre-2010 and post-2010? Slightly different. And then are the cases pre-2010 saying that this type of, I heard from Verizon employees, constitutes direct knowledge or not? Well, so I think there's very imprecise language about what constitutes direct knowledge, right? And that's the point I was trying to make. Each case is different on its facts. You've got to read them all. You know, they describe third party. What's your best case that under the pre-2010 version of the statute, pre-March 2010 version of the statute, him receiving this information from a Verizon employee about, because you have to have the, we couldn't toggle it off for the government contracts. That was pretty critical information. What's your best information that he is direct for purposes, he has direct knowledge for purposes of the original source exception in that scenario? Well, so I guess I could start with Springfield Terminal, which you remember is the invoices, the paid vouchers from the mediator who actually wasn't working when he claimed to be billing, right? So remember what our client's direct knowledge is in that case. It's a knowledge that from participating in those mediation deals, what day that mediator was working. So as the Springfield Terminal case points out and as the Philip Morris. Mr. Shea didn't get this just by doing his job. He got that toggle on, toggle off issue because someone talked to him. He couldn't observe that. He just couldn't know whether they turned it off for federal government contracts unless that employee came and told them. He couldn't sit there in the customer's offices and know the commercial customer's offices that they were doing the same billing to the government. Well, he knows because he negotiated with Verizon employees on behalf of other commercial customers and they admitted to him that we owe you money. So bear that in mind. But I have never heard a distinction between it's not direct knowledge if I hear an employee of the defendant admit that they're billing falsely. I can go back to my office and find you 100 cases where the allegations are that as a relator, I was told by an employee of the company that we're ripping people off. That's the gold standard for a relator's complaint. We try to include it every chance we get. And I think it would be fairly absurd to suggest that you have the only person who can bring information to the government is someone who hasn't heard a thing but has actually read a document. That makes no sense at all. So... Okay. We'll give you some time and rebuttal after Mr. Waxman's argument. Thank you. May it please the Court, I guess before I get into my argument, let me just address a couple of or correct a couple of points that my friend misstated. Judge Millett, this is not the first. It's the second case ever in which Relator 1 and Relator 2 are the same people. The other case is the Carter, Kellogg, Brown, and Root case in which the Supreme Court announced that I'm not aware of any other... On the pending issue, right? Excuse me? No, on the pendency. On the pendency issue. And on that issue, I think I just should point out that the now eight years that have been spent litigating this issue in this court could, of course, have been completely avoided in either of two ways. One, Mr. Shea could have amended his Verizon, his first complaint at the time he brought his second complaint, which was two and a half years before the first complaint was settled. Alternatively, he could have filed what's now called Verizon 2 five years ago after Verizon 1 was, in fact, settled and dismissed, in which case we wouldn't be here and we wouldn't have spent all this time. Now, I do want to just a couple of other things to check off. Modifications. I'm not sure that this bears on any of the issues before the court, but modifications are binding amendments to the contract that are fully negotiated between the government and the contracting party. That is absolutely black-letter law. And I have the same... I'm misunderstanding something. I don't understand why you didn't just tell them what you were doing. I'm sorry? I just don't understand what the fraud is when they said what they were doing. So... What the fraud allegations are and the complaint allegations are that they told them what they were doing, but they didn't do it in both. So the language that is quoted relates to one GSA contract. And I think that it is fair to say, it certainly occurred to me, that there is that flat-out contractual agreement recited in paragraphs at least 31 through 34 of the complaint that the parties agree that these charges can be charged. And that doesn't seem like fraud. Because this is a complaint that is otherwise, except with respect to that one contract, a set of bare-bones allegations about 20 different contracts between Verizon affiliates and the government that are based entirely on information that Mr. Shea found online. Our position on the motion to dismiss state, whether it is appropriately adjudicated under 12B1 or 12B6, is that the first to file bar requires that the case be dismissed without prejudice because however many times Mr. Shea amends his complaint, the fact will remain that he caused this action. Your position is it should be dismissed with prejudice? Our position is that on the first to file bar, the court was correct to dismiss it without prejudice. The court erred in not dismissing it with prejudice on two independent grounds. Principally, the public disclosure bar, which forbids QTAM actions based on allegations or transactions of fraud that have been disclosed, and rarely will that bar apply more clearly than it does here, where Mr. Shea admitted that everything that he knows about the contracts and what was invoiced, he found online. And we think alternatively it should have been... But that's not true of the MCI document that he had or the conversation he had with the ex-Verizon employee? Well, let's be clear here. This is an allegation that Verizon engaged in fraud with respect to 20 contracts. The details of what... And an admission by Mr. Shea that he doesn't, in fact, and there are no allegations of any facts showing that any of the accused contracts actually forbade the supposedly fraudulent charges or that Verizon actually imposed any of the forbidden charges. Now, with respect to the two non-public things in the complaint, let's be clear, first of all, about what their significance, and second of all, how they bear on the public disclosure calculus. The 2004 MCI memo, and this is, of course, involving a company that no longer exists and is not any of the four defendants in this case, applied, as Mr. Shea acknowledged in his deposition, applied specifically to the FTS 2001 contract that was at issue in Shea 1. It didn't purport to apply to anything else. Now, with respect to the statement recited that a Verizon employee said that they only had one billing module and it always charged these things, even with respect to the government, a couple of things. First of all, that, just to address one of Judge Millett's questions, that is not, in fact, direct knowledge. What Mr. Shea testified was he never spoke to this Verizon employee. He read an interview memo conducted by somebody else we couldn't name that recited this, but even if it had been direct, at pages 199 to 208 of the joint appendix, Mr. Shea testified at length about the following things. Number one, he personally knows that Verizon has many more than one billing module. Number two, he personally knows that these things can be turned off, and he also personally knows from experience that even in circumstances in which – Can we look at that? Excuse me? Can we look at that for 12B6? Oh, absolutely. How can we look at that on 12B6? Well, we think that 12B1 applies, in which case you certainly can look at it, but alternatively you should do what you did in, for example, the Fernandez case. Oh, I mean, you don't – do you think 12B1 filed after 2010? We think that both the Supreme Court and this court have said that the pre-2010 amendments apply only to complaints that were filed after the enactment date. Even if that weren't true, it would certainly only apply to conduct that occurred after that date. And here, as in the Bridgepoint Education case that we cited in our brief, the public disclosures, the defendant's entry into the contracts, and as the Bridgepoint Education court said, the most important aspects of the alleged fraudulent activity all plainly occurred before 2010. We don't know much about the dates of anything because Mr. Shea can't even tell us what dates these contracts were entered into or how long they extended. And I have a question about that. When he gives the contract numbers in the complaint, identifies the contracts, including by contract number, does that mean if someone pulls up that contract number, you can tell the dates or not? I would presume so. So then we do know that the dates are effectively incorporated by reference when he includes the contract numbers? I suppose that's true. But I think on the question of whether you can consider it, look, the public disclosure bar always involves information that's not in the complaint. The complaint isn't alleging the grounds for the public disclosure bar. And therefore, you know, unless you think that Congress didn't want the public disclosure bar to be adjudicated on a dispositive motion at the outset, which can't possibly be consistent with what the bar is supposed to do, a court has to have a way to adjudicate it. And as this court did in the Fernandez case, if the district judge considered it under 12B1, if this court concludes somehow that maybe some aspects of the fraudulent conduct might have occurred after May 23, 2010, you can and should consider this as a motion for summary judgment. I mean, the point here is, and, you know, Mr. Shea himself, I mean, in his oral argument this morning and in his papers is relying on what he said during his deposition. But it sounds like what you're saying about the non-public bits of information that are in the complaint, that the MCI document and the conversation concerning the ex-Verizon employee, that those don't do enough work for him because they're not persuasive. And, you know, the MCI document goes to not the particular contracts that are issued here. It goes to something else. But that doesn't go to whether it's germane for public disclosure purposes. That goes to whether he stated a claim or if he stated with sufficient particularity. It doesn't tell us whether or not those count for public disclosure purposes. The test for public disclosure purposes is the test that this court articulated and applied in Staples where the court said, quote, the public disclosure inquiry focuses not on additional incriminating information or related supplies, but instead on whether the quantum of information already in the public sphere was sufficient to set government investigators on the trail of fraud. This is a case in which Mr. Shea, the X and Y of the now iconic Springfield terminals case, the district court, there's really no dispute that the X, that is the contracts and the FAR regulations are publicly disclosed materials. And with respect to the Y, what Mr. Shea alleges is that he obtained from public sources, mock invoices and training materials that, quote, provided me with enough information to know which surcharges were charged. That's on page, his testimony is on page 164 of the joint appendix. And the district judge's adaptation of adoption of that is on page 347 of the joint appendix. And therefore, the fact that he may have had a contract from 2004 by a different company that related to a different contract and a statement by an employee, a former employee, that he testified under oath he knew was incorrect on three different dimensions isn't the question. The question is whether what was in the public record, that is the contracts, and the mock invoices and training materials, which were enough to, quote, provide me with sufficient information to know which surcharges were charged, was sufficient to put a government investigator on the trail. And that question, it seems to me, answers this problem. What precisely in those public documents would have put the government on notice that these things were being charged, these modifications, that impermissible charges were being transmitted to the government? Well, you know, yet another anomaly about this case is that Mr. Shea has not provided, we don't have, we don't know what these mock invoices and training materials are. We instead have his assertion that this is what was sufficient to establish for him the information, this publicly available information was sufficient to tell him that inappropriate charges were being made. Combined with this employee saying we are doing to the government the exact same charge, we're doing to the government the exact same charging practices that we've been doing to commercial industry, which he knew was filtering through impermissible charges. That's why I'm trying to see if that nugget does seem to make a difference. That nugget is both wrong and irrelevant. It's wrong because in his deposition at the pages that I've cited, 190 to 209, he said he knew that that nugget of information was wrong. There were many different billing modules. The surcharges and taxes could be turned on and off. And importantly, from his own experience, in those instances where it hadn't been turned off, Verizon could and did credit the contracting party an equal amount. And so this additional forehand information that he recites from some Verizon employee need not be and may not be taken as a given fact or gospel fact or purposes of the public disclosure. He hasn't said that in his deposition. We were just looking at the allegations of the complaints, and let's say he actually interviewed the Verizon employee himself and was told we're passing them through just like we did for all our commercial companies. We don't even have the technology to stop it. Right. Would that be enough? What I would say there is, again, as this court determined in Staples, what you look at for purposes of the public disclosure doctrine, and this has actually been recited in several different cases by this court, you look at what is publicly disclosed and you ask yourself the question, was this sufficient to lead a government investigator to investigate? That's what the public disclosure bar is aimed at. Without even looking at whatever supplemental information, what Mr. Shea is saying with respect to that memo and that forehand account is that it, quote, allowed me to search and find information about the contracts and the invoices on the public record. That's in his step three brief at page 43 in this court, and at page 43, yes, also at page 43 of his opposition to the motion to dismiss, which is document 83 in the district court's record. So if it was enough, he used that information to search and find out what he found on the public record. What is on the public record, he didn't even make the allegation that has been made and held irrelevant in so many other of your cases, that it's somehow his special expertise made only him available, you know, able to interpret what these things said. There's nothing magical here. If there is X hypothesis, and it is a flawed hypothesis, a contract that says none of these things can be charged, and invoices or mock invoices that show that they are being charged, of course that's sufficient to put the government on the trail of fraud. That's more than sufficient. That is more than what was found to be sufficient in other cases that this court has decided, including, I think, the Oliver case that this court decided for the second time. Maybe all these cases are decided for the second time a couple of months ago in this court. Can I ask you something back on First to File? Hopping around, I'm sorry, but your theory is that it should be dismissed without prejudice, and so what is the practical difference between that type of ruling and a ruling that would say, look, he filed amended complaints after the dismissal of what I'm calling Verizon One for shorthand. He filed amended complaints after that, and if relation back were necessarily limited for statute of limitations purposes to a time period that wouldn't have been a factual and legal impossibility for the case to have been filed or to exist, is there any practical difference between those two approaches, the dismissal or looking at filing a complaint and just saying you can't reach back to times when you couldn't possibly have filed a complaint? So let me just, just so that we don't completely ignore the language of the statute, we think that there is no way that that interpretation can be reconciled with the text of the statute that limits when an action may be brought, which apropos of one of Judge Randolph's questions, is the exact language that's used in the six-year statute of limitations. But so our principle submission is the text requires that it be dismissed, and I'm happy to explain why I think this court's decision in Brown and the Supreme Court's decisions in Diaz and Oscar Meyer are, you know, don't counsel a different result, but I understand your question to me, what's the practical significance? There are two practical significances. There are two respects in which it's significant, unless this court holds that, okay, we're going to allow it to be amended, but we're going to call the, we're going to deem the amended complaint to be the action that is brought for purposes of applying the statute of limitations and, and this goes to Judge Srinivasan's dissent the last time around, the public disclosure bar, because as, I guess I don't need to reiterate what you explained to us before, but the public disclosure bar is the principle mechanism for addressing the phenomenon of parasitic relators. And when the public, and the public disclosure bar takes account of everything that is publicly disclosed, which in this case would not only be everything that is known about these 20 contracts and influences, but also what is known about what was alleged in Verizon 1. And therefore, if, if, if the, if you can somehow do this by amendment, I don't see how that squares with the language of the first to file bar, but if you did and said, well, we're nonetheless going to deem it to have been filed on that day, Mr. Shea would have whatever problems he will have under the statute of limitations, but he will have an utterly dispositive problem under the public disclosure bar, because his own prior complaint will at that point finally have been publicly disclosed before his second complaint is deemed to be filed. But isn't he an original source? He is under, under no version of the original source doctrine and original source. He's obviously not an original source of any of the contracts or the invoices on which his complaint depends. He is certainly not an original source of the 2001 memo written by MCI, which was provided to him by his lawyer from wherever his lawyer got it, and he is not an original source with respect to this supposedly faithless Verizon former employee, because as he explains under oath, not only did this information come from the employee, he didn't even talk to the employee. He couldn't even say who the employee was or where he worked. All he knows is that he read some investigator's report. And, you know, as this court explained in the Finley versus FPC Boron case, the point of the QI-TAM statute was essentially to instantiate the recognition that it takes a thief to catch a thief, and therefore original sources were people who were either co-conspirators or directly involved in the fraudulent activity so that they could explain based on their direct and independent knowledge to the government before suing what it was. Now, Judge Millett, just on the question of whether direct fell out or didn't fall out, two points. Number one, direct was not included in the post-2010 statute, but as Judge Koster pointed out in United States XRL Bogina versus Medline Industries, which is reported at 809 F3rd 365, that is almost certainly because independent, the meaning of the word independent already included a requirement that it be direct. In any event, I forgot my in any event point. Why he wasn't direct. Why he wouldn't be an original source even if... Right, I mean, he is not an original source of this information whether you include it or not. I mean, this is even leaving aside the fact that the information that he's now claiming originality as to is information that he learned third or fourth hand and in any event refuted under oath in his deposition. And then back on First to File, sorry to keep going back, but so how do you distinguish Oscar Mayer since there's nothing in the text there that said pro se is different or civil rights is different? Well, okay. I mean, I think, you know, as I think Your Honor pointed out in Hallstrom versus Tillamook County, the Supreme Court declined to, the majority declined to follow Oscar Mayer, principally on the ground that Oscar Mayer involved, as was also the case in Brown and in Diaz, and I can't remember what other cases my friend is relying on, pro se civil rights. No, no, no. The majority in Hallstrom didn't rely on that at all. They said, you know, but see. Now you get so much of the parenthetical. The dissent talked about that, but the holding didn't. And Tillamook, and just to lay it on the line for you, Tillamook and McNeil, neither of them filed new complaints. Tillamook wanted to stay, and I think McNeil may have wanted to be held in abeyance or something like that. They just hadn't done, and Tillamook talked about, look, no, you've got to, it talks about bringing an action, which means filing a complaint, which is why I'm trying to figure, so I'm trying to figure out, you said text first thing, and now you're giving me non-text. And then even if we're doing text and talk about bringing an action, why isn't an amended complaint? So I'm going to do the text, but you're absolutely right that several of these cases involve holding something in abeyance. That was certainly true in Diaz and Oscar Mayer. That is, and I think it was true in Brown. I confess I can't remember exactly what was requested, but I believe it was. The salient point, the textual point here, is that Oscar Mayer and Brown and Diaz all involved timing provisions. That is, they all involved something that the plaintiff had to do as a prerequisite to filing. And they did not involve an express prohibition against filing. It was all until or unless first, and therefore, as the Federal Circuit explained in the Central Pines case that involved 28 U.S.C. Section 1500, quote, In instances where statutes impose a prerequisite to filing, which a plaintiff has failed to meet upon filing, a supplemental complaint may cure such a defect, citing Diaz and Black. I guess it doesn't, textually, what I'm struggling with is this doesn't sound, no one may bring a related action based on, when there's a pending action, no one may bring a related action. Correct. But over then in Subsection E, we have something called certain actions barred. That's where public disclosure is, certain actions barred. That sounds like an upfront explicit prohibition, but that's not where they put first to file. And first to file obviously turns you on what is pending at the time. And if we look at the amended complaint here, there was nothing pending at the time. What is so prohibitory about this? Amending a complaint is not bringing an action. Everybody, it's beyond dispute that an action is brought at the time that it is initiated. That, in fact, is the synonym that Congress uses in the False Claims Act. And an action is not brought when an existing complaint is amended. First to file is not one of the reasons that actions are barred. If I'm looking textually here, there are a lot of statutes that have a lot of things that can be called preconditions. And sometimes they seem to get fixed later, and sometimes they don't. And textually, the language isn't like the things that I see in E, like the public disclosure, shall dismiss, or in no event may a person bring an action. That's not the type of language that we have here, so we have to give effect to that. I'll take one more try at convincing you. Yes, there are two different provisions here, the first to file bar and the public disclosure bar, that prohibit the bringing of an action, you know, under certain circumstances. They aren't circumstances in which the plaintiff himself has failed to do something in advance, such that you simply hold it, for example, in the context of a civil process, civil rights claim, until they go ahead and do it. These are the statement that where a person brings an action under the False Claims Act, no person may bring a related action, is, I'm not sure how, it is an absolute express prohibition, and as was the case that was at issue in Central Pines, and maybe even a stronger case, is the 11th Circuit's en banc decision in Harris, which involved the Prison Litigation Reform Act, that says, you know, no prisoner in custody may file a case, and the question was, when the prisoner was released, could he amend his complaint in order to then file it? And the answer was no, because this says, no prisoner in custody. What would happen if you had, imagine someone, the first to file complaint is massive, it's very complicated, involves all kinds of international information, it's going to take a long time for the government to investigate this one, and it stays under seal for a long time. In the meantime, day two, after that one is filed under seal, another key terminator comes in with something super narrow that is included within that first file complaint, but that's super tiny, about one one-hundredth of that percentage of that complaint, and it takes the government no time at all to clear that second case, which also happens to be filed on the Rocket Docket in the Eastern District of Virginia. That case goes to judgment, final judgment before the first case is unsealed. Nobody even knows about the first one, right? What would happen then? Would it have to be vacated? Because you're saying it's a nullity, it could never have been brought? Let me just make sure I understand this. So, the first one is under seal for years while the government either investigates or is trying to get around it. The second one is filed under seal, the government clears it. It doesn't take it over if it says go ahead. It doesn't take it over, but it can go forward. Yeah, it would have to be vacated. Absolutely. And it goes exactly to the reason why we have the first to file bar, which is the first to actually file, whether the second one knows that there was another one or not, is what gives the government the information that it needs to investigate. The fact that somebody has a little teeny version of it that she files second doesn't do anything. Your hypothesis is to help the government. The government on day one already was apprised of all the information it needed to know. Okay. Thank you, Mr. Lackland. Do we have rebuttals? We'll give you two minutes for rebuttal. Please. So, Judge Blatt, your question was a very good one in terms of the logic involved in this jurisdictional mousetrap type stuff. Your question about a case that goes to judgment, that was what you emphasized in your Heath opinion. You were dead right. Okay. So, we're not talking about a jurisdictional statute. And that's why your question really puts them at the point of their logic. But here's another point that I'd make to you. The cases say repeatedly, apropos of your looking at the language, some things are barred and no person may bring. What the cases say in all these contexts, so there have been district court cases that have read McNeil, you know, looked at it and said the fact that McNeil said that the statute prohibits that does not necessarily answer what is the remedy for that statutory violation, right? And that, here I would say that in the context of this specific statute, which is different than all others, a case can't. The problem for you is that they, under the heading E, certain actions are barred, which sounds very prohibitory. They use the same, you know, a person may not bring an action for a different provision. Sure. But they. Sure, but. It's confusing. Actually, Congressman, I wasn't thinking about it at this level. But that's the type of language they use for things that are the actions themselves that are barred. Right. And that was the same statutory language in Brown versus Whole Foods, same statutory language in Oscar Meyer, same statutory language in Williams versus Westinghouse. With all due respect, Verizon's counsel is wrong when he says that those cases don't involve prohibitory language. They involve precisely the same kind of proscriptive no action may be brought that this statute does. And so the only point I'm trying to make is each one of these statutes is unique. If you read McNeil and Hallstrom, they didn't just rely on plain language. They talked about the purpose of the prohibition. They talked about the reasons why it made sense, and there was no amendment there. All I'd ask you to do is look at this unique statute. Because if you look at this unique statute and the incentives that the first to file bar is supposed to provide, it makes their argument make no sense. What is the problem with their position if we just have a clean rule that says once that other case is dismissed, then instead of doing an amended complaint, just do a new complaint? There's some more procedure around it, and we don't know who will get their complaint in first. But you filed amended complaints. You could have filed new complaints. Well, so again, we've got the arbitrary problem in terms of timing that happens as a result of that rule. But remember, the incentive is we want the Department of Justice. The Department of Justice would love to have ten different relatives come forward with respect to the same core set of allegations against the defendant. They will learn more. And so in terms of the incentive of the ---- What they learn is, I mean, assume five people file and they all get one minute difference. They'll initially be under seal for the government to look at before anyone can file a motion to dismiss on first to file. So if we have arbitrariness either way this rule works, the government will have its ability to investigate, will it not? Sure. Under either theory? But the issue is if the government investigates and say for lack of resources, lack of time, they decide we're going to leave this to the relators bar to go forward. What would be fair in that circumstance is for the next person who was next in line to get the benefit of the first to file incentive. That person acted on the incentive and filed maybe a day late from the first one, right? It would be really unfair to say, no, no, no, nothing has effect. We have to wait until the first case is dissolved and then and only then the person who files to the first minute gets in the courthouse door. And that is truly arbitrary. It creates disincentives, right, for coming forward. And it just also contradicts the kind of common sense jurisdictional issues that you were talking about. Common sense says there is no practical difference between dismissal without prejudice or letting the case proceed under a supplemental amended complaint. That's the holding of Oscar Meyer, it's a holding of Brown, it's a holding of Williams v. Westinghouse. And if you look at the dissent in Harris v. Garner, the 11th Circuit case about the inmate, the dissent is really interesting when it talks about the adoption of Rule 15B in 1963. It's very smart to say it's worth your time because it points out that, you know, it has been a settled practice for 50 years in the United States that some jurisdictional defects can be failed, can be cured by after occurring events that are the subject of supplemental pleading. And that's exactly what we did. There was nothing pending when we filed our amended complaint. Okay. Thank you. Thank you. And since we promised we'd do it, Mr. Waxman, I'll give you two minutes for a rebuttal and then. Judge Millett, you're going back to your correction of me on Tillamook's treatment of Oscar Meyer. It is true that the way that the majority distinguished Oscar Meyer was not that it was a pro-state plaintiff. What distinguished it was, and I'm quoting from the language of the majority opinion, it characterized Oscar Meyer as a case where requiring dismissal and refiling, quote, would serve no purpose other than the creation of an additional procedural technicality, in that case lodging a complaint with the state civil rights authority. That is, for many of the reasons we discussed during my main oral argument, not the case here. There are public disclosure bar and statute. But you said it doesn't matter. Text is text. So what if there's some inconvenience, right? Well, if what you're saying is text is text, then you have to ask, I think the court will have to ask itself, how can the Supreme Court's Oscar Meyer be reconciled with the Supreme Court's later decision in Hallstrom versus Tillamook County? This is the way that the majority did it. Justice Marshall and Justice Brennan, in dissent, argued that the fact that this was not a pro-state plaintiff and this was a statute in which lawyers, sophisticated lawyers are involved, didn't necessarily mean that Oscar Meyer shouldn't apply. But the way that the majority in Tillamook County reconciled the court's prior decision in Oscar Meyer was that it was a case in which it would serve absolutely no purpose because you only had to have the plaintiff file something he should have filed before. The only other point I'll make is this reference to what is fair to the relators bar has to be taken deeply in context. The point here is not whether the relators bar and the relators are going to skim off 15% to 30% of the public's recovery from fraud. The question is what is it that Congress thought should be done to help put government investigators on notice of the fraud that they are charged with addressing? And the first filed petition and a second filed petition, if the public disclosure bar doesn't bar it, is all that is, quote, fair to the relators bar. Thank you. Thank you, counsel. The case is submitted.
judges: Srinivasan, Millett, Randolph